ROY NEWTON LUCAS AND FAYE BROZE LUCAS, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10764–78.    Filed July 6, 1982.

Roy Newton Lucas, pro se.
*Sara W. Dalton*, for the respondent.

CHABOT, *Judge*: Respondent determined a deficiency in Federal individual income tax against petitioners for 1976 in the amount of $7,516.05. After settlement of other issues, the issues for decision are:

1

(1) Whether, under section 217,[1] petitioners are entitled to deduct as moving expenses the costs of (a) converting electrical applicances to U.S. standard frequency and voltage and (b) refitting carpets and drapes;

(2) Whether petitioners are entitled to deduct legal fees and witness transportation costs in connection with litigation; and

(3) Whether petitioners are entitled to deduct professional dues and subscriptions, where the cost thereof would have been reimbursed by petitioner-husband's employer.

### FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioners Roy Newton Lucas (hereinafter sometimes referred to as Roy) and Faye Broze Lucas (hereinafter sometimes referred to as Faye), husband and wife, resided in Houston, Tex.

In January 1976, petitioners moved from Tokyo, Japan, to Houston in connection with Roy's employment by the Petreco Division of Petrolite Corp. (hereinafter sometimes referred to as Petreco). Petitioners paid $10,127 expenses in moving household goods and personal effects, $2,219 expenses in traveling, and temporary living expenses of not less than $1,000 in moving from Tokyo to Houston.

In connection with this move, petitioners converted certain of their electrical appliances which were suitable for use in Japan, under a 50-cycle, 100-volt system, so as to make them usable with the 60-cycle, 120-volt system standard in the United States.

Faye has allergies which require that she not live in a place that has used carpets, or where people smoke. The apartment petitioners wanted to lease came with carpets and drapes. The apartment owner agreed to permit petitioners to install their own carpets and drapes, but only on condition that the costs thereof would be borne by petitioners and that the carpets and drapes would remain in the apartment when petitioners left.

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.

Petitioners agreed to these conditions and paid for refitting carpets and drapes in the apartment. Petitioners paid at least $500 on carpeting in connection with their move into this apartment.

Roy and Mary Ann Lucas (hereinafter sometimes referred to as Mary Ann) were parties to a suit which arose from their former marital status. The suit dealt with claims as to property and as to custody of the daughter of Roy and Mary Ann. During 1976, petitioners paid fees aggregating $2,261.07 to Roy's lawyers in connection with this suit.

Roy is a registered professional engineer. During 1976, Roy paid $93 in professional dues. If Roy would have applied to Petreco for reimbursement, then Petreco would have reimbursed Roy's entire expense; however Roy did not ask Petreco to reimburse him.

## OPINION

### I. Moving Expenses

Petitioners maintain that they are entitled to deduct $1,163 as expenses incident to acquiring a new lease in connection with their move from Tokyo to Houston. They assert that these expenses were to convert electrical appliances to the U.S. standard cycles and voltages, and to refit carpets and drapes. Respondent argues that these are nondeductible moving expenses and that, in any event, petitioners have failed to substantiate the majority of the amount in dispute.[2]

Under section 217,[3] petitioners may deduct expenses inci-

---

[2] On their tax return, petitioners deducted $15,075 as moving expenses. In the notice of deficiency, respondent disallowed the entire amount for lack of substantiation. By stipulation, respondent conceded as to items aggregating $13,346, and petitioners conceded as to items aggregating $566.

[3] Sec. 217 provides, in pertinent part, as follows:

SEC. 217. MOVING EXPENSES.

(a) DEDUCTION ALLOWED.—There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work.

(b) DEFINITION OF MOVING EXPENSES.—

(1) IN GENERAL.—For purposes of this section, the term "moving expenses" means only the reasonable expenses—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(E) constituting qualified residence sale, purchase, or lease expenses.

(2) QUALIFIED RESIDENCE SALE, ETC., EXPENSES.—For purposes of paragraph (1)(E), the

dent to the acquisition of a new lease in connection with their move from Tokyo to Houston. The statute cautions that such expenses do not include payment or prepayment of rent, but does not otherwise refine the concept. Application of the statute's lease provisions appears to be a matter of first impression.

The relevant portions of section 217 were given their present form by section 231(a) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 487, 577).[4] In particular, "qualified residence * * * lease expenses" was a new category of deductible moving expenses in the 1969 Act. H. Rept. 91–413 (Part 1) 75, 76 (1969), 1969–3 C.B. 200, 247, 248; H. Rept. 91–413 (Part 2) 50–51 (1969), 1969–3 C.B. 369; S. Rept. 91–552, at 109, 1969–3 C.B. 423, 493; H. Rept. 91–782 (Conf.), at 300–301 (1969), 1969–3 C.B. 644, 658; Staff of Joint Comm. on Internal Revenue Taxation, General Explanation of the Tax Reform Act of 1969, at 102. The technical explanation part of the report of the House of Representatives Committee on Ways and Means provides as follows:[5]

*Acquisition of a lease*

Subparagraph (D) of section 217(b)(2) includes in the definition of qualified residence sale, purchase, or lease expenses the expenses incident to the acquisition of a lease on property used by the taxpayer as his new residence in the general location of the new principal place of work. Thus, a taxpayer is allowed to deduct the cost of fees or commissions for obtaining a lease, sublease, or assignment of an interest in property used by the taxpayer as his new residence in the general location of the new principal place of work.

---

term "qualified residence sale, purchase, or lease expenses" means only reasonable expenses incident to—

*       *       *       *       *       *       *

(D) the acquisition of a lease by the taxpayer or his spouse on property used by the taxpayer as his new residence in the general location of the new principal place of work (not including amounts which are payments or prepayments of rent).

[4]Under prior law, taxpayers have been required to include in income their employer's reimbursements of costs of installing carpeting and remaking and rehanging draperies, and deductions for such costs have been disallowed. *Lull v. Commissioner*, 434 F.2d 615 (9th Cir. 1970), affg. 51 T.C. 841 (1969) (taxable years 1959–61); *Ritter v. United States*, 183 Ct. Cl. 875, 393 F.2d 823 (1968) (taxable year 1958).

[5]H. Rept. 91–413 (Part 2) 52 (1969), 1969–3 C.B. 370. The other committee reports did not include separately designated technical explanations. This portion of H.R. 13270 (see pp. 158–161 of the Aug. 8, 1969, print as referred to the Senate Committee on Finance) was enacted without change from the language described in the House report.

To the same effect is section 1.217–2(b)(7)(iv), Income Tax Regs.[6]

We gather from the foregoing that the focus of the statute and the Congress' intention is on costs of creating the legal relationship of a lease and not on costs of using the leased property. Petitioners' costs here in issue are incident to their being able to live comfortably in the apartment they leased and are not costs incident to their acquiring the lease.

We hold for respondent on this issue.

## II. Litigation Costs

Petitioners maintain that they paid legal fees and other legal expenses in defense of a suit by Mary Ann to acquire from Roy property Roy held for the production of income; they assert that the suit was not properly a divorce action as Roy was not married to Mary Ann. Respondent argues that petitioners have not offered cogent evidence as to the purpose of the expenses, and have not offered any evidence to substantiate the claimed expense of transportation of a witness. As a result, respondent maintains, petitioners are not entitled to the claimed legal expense deductions.

We agree with respondent.

Section 212(2) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income."

The determination of whether a litigation expense is deductible under section 212(2) depends on "the origin and character of the claim" with respect to which the litigation expense was incurred, rather than the potential consequences to the taxpayer's fortunes. *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966); *United States v. Gilmore*, 372 U.S. 39, 49 (1963); *Ostrom*

---

[6]Respondent directs our attention to subpar. (3) of sec. 1.217–2(b), Income Tax Regs., which states that "Expenses of moving household goods and personal effects do not include, for example, * * * expenses of refitting rugs or draperies, * * * and similar items." This subparagraph of the regulations provides guidance for interpretation of sec. 217(b)(1)(A) relating to "moving household goods and personal effects." The last sentence of this subparagraph states that "The above expenses may, however, be described in other provisions of section 217(b) and if so a deduction may be allowed for them subject to the allowable dollar limitations." Under these circumstances, we conclude that the cited regulation provides no guidance for interpretation of the statutory provisions significant in the instant case, i.e., pars.(1)(E) and (2)(D) of sec. 217(b).

*v. Commissioner*, 77 T.C. 608, 613 (1981). In *Boagni v. Commissioner*, 59 T.C. 708, 713 (1973), we described this rule as follows:

the "origin-of-the-claim" rule does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. * * * Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy. [Fn. ref. omitted.]

Accord *Brown v. United States*, 526 F.2d 135 (6th Cir. 1975).

Petitioners presented little information regarding the nature of the suit against Roy. The exhibits petitioners introduced refer to (1) a Japanese divorce proceeding between Roy and Mary Ann, which dealt with custody of their daughter and the treatment of their property, (2) a subsequent Oregon proceeding by Mary Ann against Roy for a dissolution of their marriage, and (3) an Oregon proceeding by Roy against Mary Ann relating to custody, child support, and visitation rights as to their daughter. Petitioners have wholly failed to show us how the origins of the litigation in issue relate to the conservation of any property held by Roy for the production of income, rather than the untangling of Mary Ann's and Roy's former marital status.

We hold for respondent on this issue.

### III. *Professional Dues*

Petitioners maintain that they do not believe Roy "was entitled to claim reimbursement for [the] professional dues and subscriptions to professional journals from [Roy's] employer." They assert that "[Roy] is a registered professional engineer quite apart from a particular employer at any given moment." Respondent argues that, since Roy's expenses would have been paid by Petreco if Roy had so requested, the expenses are not "necessary" to Roy's trade or business and so are not deductible.

We agree with respondent.

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," including a trade or business as an employee.

A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from his or her employer for an expenditure related to his or her status as an employee. *Heidt v. Commissioner*, 274 F.2d 25 (7th Cir. 1959), affg. a Memorandum Opinion of this Court;[7] *Kennelly v. Commissioner*, 56 T.C. 936, 943 (1971), affd. without opinion 456 F.2d 1335 (2d Cir. 1972); *Stolk v. Commissioner*, 40 T.C. 345, 356 (1963), affd. 326 F.2d 760 (2d Cir. 1964); *Podems v. Commissioner*, 24 T.C. 21, 22–23 (1955).

The parties have stipulated as follows: "Petitioner [Roy] paid professional dues in 1976 in the amount of $93.00. If submitted to Petreco, these expenses would have been reimbursed. However, petitioner did not submit the expenses to Petreco for reimbursement."

Petitioners have failed to show us why the dues expense was necessary if Roy could have avoided the cost simply by asking.

We hold for respondent on this issue.

Although all of the issues presented to us are decided for respondent, respondent has by stipulation conceded many of the adjustments he made in the notice of deficiency. Accordingly,

*Decision will be entered under Rule 155.*