STANLEY COHEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Commissioner
Docket No. 22076-90
United States Tax Court
T.C. Memo 1993-318; 1993 Tax Ct. Memo LEXIS 325; 66 T.C.M. (CCH) 162; July 20, 1993, Filed *325 Decision will be entered under Rule 155. Stanley Cohen, pro se. For respondent: Alan R. Peregoy. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for the year 1987 in the amount of $ 2,453 and additions to tax pursuant to section 6653(a)(1)(A) in the amount of $ 123, plus 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence pursuant to section 6653(a)(1)(B). In an amendment to answer filed September 23, 1991, respondent, pursuant to section 6214(a), claimed an additional deficiency of $ 3,686, a section 6653(a)(1)(A) addition to tax of $ 428, instead of $ 123, and a section 6651 addition to tax of *326 $ 612. Concessions having been made by the parties, the issues for decision are: (1) Whether petitioner received income in the amount of $ 948 from the Baltimore Orioles, and if so, whether he is entitled to deduct associated expenses in excess of this amount; (2) whether petitioner is entitled to deduct employee business expenses claimed on Form 2106 in the amount of $ 10,693; (3) whether petitioner is liable for the addition to tax for failure to timely file; and (4) whether petitioner is liable for the additions to tax for negligence pursuant to section 6653(a). Some of the facts have been stipulated. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Baltimore, Maryland, at the time the petition was filed. For the years 1985 through 1988, petitioner was a volunteer "designated hitter", who assisted the Baltimore Orioles (Orioles) in the sale of season tickets to the ball games. He sold what is referred to as the mini-plan and the full-season plan. Petitioner did not receive compensation in the form of money. However, because petitioner sold a certain amount of tickets, he received an expense-paid trip to Florida *327 as a guest of the Orioles during spring training. The Orioles reported Form 1099-Misc. payment in the amount of $ 948 to the Internal Revenue Service as nonemployee compensation for petitioner. Gross income includes all income from whatever source derived regardless of the form. Sec. 61(a). The value of the trip to Florida to the Orioles' spring training camp ($ 948) was received by petitioner as a bonus or fringe benefit for his 1987 season Orioles ticket sales and is clearly gross income as defined by the Code and regulations. Petitioner's efforts in time and money generated a number of sales of tickets for the Orioles. However, where an "activity is not engaged in for profit", no deductions are allowed except as provided by section 183. Nevertheless, deductions are allowable if they would be allowed for an activity engaged in for profit but only to the extent that the gross income derived from the activity exceeds the deductions. Sec. 183(b)(2). Petitioner was employed by Shepard's McGraw-Hill, Inc., as a representative to the Federal Government during the tax year in question. Petitioner stated that he entered into the activity of selling tickets for the Orioles for *328 the prestige of the activity and did not have the objective of making a profit. Since petitioner acknowledged that he did not have the requisite profit objective, the question remains as to whether he may deduct any expenses associated with selling Orioles tickets. In order to achieve sales of approximately 22,000 tickets, petitioner incurred out-of-pocket expenses not reimbursed by the Orioles. Petitioner maintained that he spent approximately $ 500 on pay phone calls, $ 360 long-distance phone charges, $ 200 on stationery and postage, $ 442 for tickets so that he could take prospective buyers to a game, transportation, and other expenses associated with the selling of the tickets. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any deduction claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). When deductions which have been claimed are not adequately substantiated, we may estimate expenses if we are convinced from the record that the expenses were incurred. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). In the case at bar, *329 we are convinced that petitioner incurred expenses associated with selling the Orioles tickets. We note that petitioner concluded that he had approximately $ 3,000 of total expenditures. This Court does not find the total amount of the selling cost to be unreasonable since it is approximately 14 cents per ticket as compared with $ 8.50 total purchase cost of a ticket. Accordingly, since he was not engaged in selling tickets for a profit, deductions attributable to this activity are allowed only to the extent of gross income ($ 948) generated by the sale of such tickets. During the tax year in question petitioner was employed by Shepard's McGraw-Hill as a law book representative for Federal Government accounts, most of which are located in the Washington, D.C., metropolitan area. For use in his employment and commuting between Baltimore and Washington, petitioner leased a 1984 Oldsmobile Cutlass. For the 1987 tax year, petitioner claimed unreimbursed employee business expenses on Form 2106 in the amount of $ 10,693. This total consisted of $ 7,283 in vehicle expense, $ 1,500 in parking fees, and $ 1,910 in other expense. Petitioner has substantiated the following: Auto Insurance/MAIF expenses [1]
$ 2,336.65
Gasoline
1,146.20
Auto Lease
4,022.55
*330 Bertrand L. Smith, a witness for respondent, was petitioner's supervisor during the tax year in question. He testified that the company's practice was to use a monthly travel and expense summary report. Petitioner would keep details of his expenses incurred for business. On the form were two columns entitled "Due Company" and "Due Me". These columns were utilized for monthly reconciliation of expenditures. The way it worked was the employee would write himself company checks to cover monthly expenditures. Theoretically, at the end of the month the total in these columns should be equal, resulting in a closing balance of zero for both columns. Any amounts not appropriately accounted for during the month would be accounted for during the next month. In regard to automobile expenses, the company had two plans. Either the company provided the car or the employee supplied his own vehicle. Petitioner chose to supply his vehicle in the form of a leased automobile. Each month he presented to the company an itemized mileage log, depreciation, insurance, and other miscellaneous incurred expenses. These expenses, as well as other expenses claimed, were reimbursed by the company *331 each month. During the course of the trial petitioner introduced his monthly travel and expense report summaries which were submitted to Shepard's McGraw-Hill during the tax year in question. Mr. Smith stated that it was company policy to reimburse almost all of petitioner's business-related expenses. There were, however, a few exceptions, for example, annual fees for credit cards, airline-maintained lounges, babysitting fees, housekeeping fees, traffic violations received on company business, business gift or membership dues in excess of $ 25, and subscriptions to periodicals. According to the travel and expense reports submitted by petitioner, he received a total reimbursement of $ 10,040.37 from Shepard's McGraw-Hill during 1987. The following is a breakdown of petitioner's reimbursed expenses: Insurance
$  2,251.36
Mileage
3,089.46
Depreciation
1,200.00
Auto registration
288.00
Parking, tolls
1,387.50
Telephone, postage, supplies
1,719.05
Federal Express, etc.
105.00
Total
$ 10,040.37
None of this total was included in petitioner's income. He claimed an additional $ 10,693 on a Form 2106 as unreimbursed business expenses broken down as follows: Vehicle
$  7,283
Parking
1,500
Miscellaneous
1,910
Total
$ 10,693
*332 Petitioner substantiated business expenses relating to automobile insurance, gasoline, and automobile lease. The evidence presented at trial reveals that Shepard's McGraw-Hill's policy was to cover most of petitioner's business expenses, and none of these expenses was on the list of exceptions not covered. In fact, he was reimbursed for automobile insurance, mileage, depreciation, and registration as well as parking, telephone, supplies, postage, and other miscellaneous expenses. Where a party is entitled to reimbursement from his employer for business expense, a deduction is not allowable. Lucas v. Commissioner, 79 T.C. 1 (1982). Since petitioner failed to prove that any of the expenses on Form 2106 were not reimbursed, or were not subject to reimbursement, by his employer, he cannot take a deduction for these items. Respondent determined an addition to tax pursuant to section 6651(a)(1). This section imposes an addition to tax for failure to file a timely return, unless petitioner shows that such failure was due to reasonable cause and not due to willful neglect. Petitioner failed to offer any evidence on this issue. We sustain respondent's *333 determination with respect to this issue. Section 6653(a)(1)(A) provides that, if any underpayment of tax is due to negligence, there shall be added to the tax an amount equal to 5 percent of the amount of the underpayment. Section 6653(a)(1)(B) provides that there shall also be added to the tax an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such payment which is attributable to negligence. Petitioner has the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner failed to carry the burden of proof on this issue. Accordingly, we sustain respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Maryland Automobile Insurance Fund↩